```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - X
LAMONT JACOBS,                           :
                                              99 Civ. 4976 (WCC)
                Plaintiff,               :

        - against -                      :     OPINION
                                                AND ORDER
THE COUNTY OF WESTCHESTER, et al.,       :

                Defendants.              :
- - - - - - - - - - - - - - - - - - - - X
```

**A P P E A R A N C E S :**

LAMONT JACOBS
**Plaintiff *Pro Se***
#98-A-1746
Auburn Correctional Facility
P.O. Box 618
Auburn, New York  13021

CHARLENE M. INDELICATO
WESTCHESTER COUNTY ATTORNEY
**Attorneys for Defendant
  The County of Westchester**
Michaelian Office Building
148 Martine Avenue, 6th Floor
White Plains, New York  10601

SYMA B. FUNT,
  Senior Asst. County Attorney

    Of Counsel

**Copies Mailed to Plaintiff *Pro Se* and
Defendants Counsel of Record _____**

**CONNER, Senior D.J.:**

At the direction of the Court of Appeals for the Second Circuit, this Court has reconsidered its dismissal of this action with prejudice for want of prosecution to determine whether the *pro se* plaintiff was competent to comprehend the consequences of his inaction.

**BACKGROUND**

Plaintiff, Lamont Jacobs, through his attorney at the time, brought a § 1983 suit on July 9, 1999 against the County of Westchester (the "County"). Plaintiff was incarcerated at the County Department of Correction on August 27, 1996, found guilty of Robbery in the 2nd degree on January 27, 1998, sentenced to 15 years on March 4, 1998 and removed to a State Correctional Facility on April 2, 1998. (Funt 8/30/06 Ltr. at 2.) Plaintiff alleged that while he was in the prisoner's holding pen of the White Plains Courthouse on November 7, 1996 he was injured when correctional officers assaulted him, and that on September 8, 1997 he suffered similarly forceful treatment from correctional officers while in his cell. He further alleged that the County failed to provide him with adequate and reasonable medical treatment needed as a result of the injuries he sustained, and that the County's policies and practices permit the use of excessive force against inmates.

On April 28, 2000 plaintiff's counsel wrote the Court seeking permission to discontinue the action because plaintiff was "totally incoherent and [did] not understand the realities of his situation," as well as "mentally incapable of pursuing his claim" and "was confined to a prison psychiatric ward." *Jacobs v. County of Westchester*, 2005 U.S. App. LEXIS 19523, at *3 (2d Cir. Sept. 7, 2005) (internal quotation marks omitted). By letter dated May 1, 2000, the Court allowed

counsel to withdraw on the condition he notify plaintiff that failure to find new counsel within six months would result in dismissal for want of prosecution. Counsel so notified plaintiff on May 3, 2000.

Neither this Court nor defendant's counsel heard from plaintiff during the next six months. On November 15, 2000, we issued an Order to Show Cause for Dismissal with Prejudice instructing plaintiff to call chambers on January 19, 2001 and show cause why the action should not be dismissed for want of prosecution. Plaintiff sent three letters to the Court after this, on December 6, 11 and 16, 2000, requesting he be brought to Court. The Court replied by letter on December 13, 2000 and January 3, 2001 denying those requests and again directing plaintiff to call on January 19, 2001. Plaintiff never called.

By Order entered January 24, 2001, this Court dismissed plaintiff's claim with prejudice for failure to prosecute. Plaintiff filed a Notice of Appeal to the Second Circuit on August 19, 2002, more than one and a half years after this Court's Order, claiming the Court abused its discretion in dismissing plaintiff's claim. Plaintiff wrote to this Court several times after filing the appeal, on November 1, 10, and December 6, 2004, inquiring about the status of his case. We responded twice that the case was dismissed but pending appeal and that this Court therefore no longer had jurisdiction. On September 7, 2005, the Circuit remanded the case to this Court with instructions to make factual findings regarding the reasons for plaintiff's lack of responsiveness and confinement in the prison psychiatric ward, and to determine on the basis of those findings whether we should reconsider our earlier decision. *Jacobs*, 2005 U.S. App. LEXIS 19523, at *9.

In a telephone call initiated by the Court, plaintiff participated in a status conference from Auburn Correctional Facility ("Auburn") on December 7, 2005 in which he indicated that he wanted to proceed with the case *pro se*. He stated that his "investigators" were working to help him prepare for trial and that he felt he was competent to proceed *pro se*. Plaintiff agreed to authorize defendants to obtain his medical records. After receiving these records, and not having heard from plaintiff, defendants submitted a letter brief to this Court on August 30, 2006, serving plaintiff with a copy on the same day, arguing that the dismissal with prejudice for failure to prosecute was warranted. Defendants state they suffered substantial prejudice as a result of plaintiff's failure to prosecute, "particularly because plaintiff's allegations in his summons and complaint are vague and ill-defined and the County has no notice, nor records of Jacobs' allegations against it." (Funt 8/30/06 Ltr.)

Defendants also submitted plaintiff's medical record and a narrative report and summary of plaintiff's mental status from a nurse investigator. (Funt 9/1/06 Ltr., Exs. 2 & 3b.) According to the report and medical record, plaintiff has psychiatric problems dating back at least to 1992. Plaintiff was hospitalized at Central New York Psychiatric Center ("CNYPC") from June 19 to December 15, 1999. His diagnoses included delusional disorder, antisocial personality disorder, mild mental retardation and history of head injury. During this time, he was delusional and uncooperative and a court ordered treatment but not medication over objection on December 2, 1999. He was returned to Auburn because he refused all treatment. Plaintiff continued to receive mental health services but refused medication because he did not believe he had a mental health problem. According to his medical records, he suffered from "magical thinking," poor hygiene, delusions and hallucinations.

On April 6, 2000 plaintiff was admitted to the Intermediate Care Program ("ICP") at Auburn because of poor adjustment to the general population. Defendants state that the ICP "provides

3

housing and treatment for inmates while also affording the inmate a protected environment that separates him from the general population" and is "similar to receiving mental health services at a clinic in a community." (Funt 8/30/06 Ltr. at 3.) Plaintiff continued to suffer from delusions, claiming for example that Governor George Pataki was his father. He attended recreational programs but kept to himself and was uninterested in any additional structured program. He continued to deny any psychiatric problems but still suffered from confusion, poor judgment and delusions. Delusions about connections to Governor Pataki, the CIA and various other government officials persisted, and he spoke of conspiracies against him and of his great wealth, claiming to have millions of dollars. On May 6, 2002 Dr. Mitchell Langbart, Psychiatrist II at Auburn, noted plaintiff had been in ICP for 2 years and was still uncooperative, non-interactive, refusing medications, suffering from scattered and impoverished thinking and lack of self-awareness. (Funt 9/1/06 Ltr., Ex. 3b.) From May 14, 2002 on, plaintiffs psychiatric symptoms improved after a court ordered medications over objection and plaintiff began treatment with anti-psychotic drugs. *Id*.

During the relevant time frame, plaintiff was in keep-lock twice: from July 23 to August 22, 2000 and September 22 to October 2, 2000. He made several calls to his mother, family and friends at various times while at the ICP and received outside communications and mail.

On September 20, 2006 this Court sent plaintiff a letter instructing him to respond by October 15, 2006 to defendant's evidence and arguments of August 30. After not hearing from plaintiff the Court sent another letter to the same effect on April 16, 2007 giving plaintiff until May 14, 2007 to respond. Plaintiff has not responded to this Court or defendants with either an explanation or evidence in opposition to defendant's arguments and factual submissions. This Court now

reconsiders the dismissal, taking into account defendant's arguments and plaintiff's mental health and time in the ICP as instructed by the Circuit Court.

**DISCUSSION**

Rule 41(b) authorizes a district court to dismiss an action "[f]or failure of the plaintiff to prosecute or to comply with . . . any order of the court." FED. R. CIV. P. 41(b); *Lucas v. Miles*, 84 F.3d 532, 534-35 (2d Cir. 1996); *Antonio v. Beckford*, 2006 WL 2819598, at *2 (S.D.N.Y. Sept. 29, 2006). However, the Second Circuit cautions that "dismissal is a harsh remedy and is appropriate only in extreme situations." *Lucas*, 84 F.3d at 535. For a *pro se* litigant, dismissal is reserved for "circumstances [that] are sufficiently extreme," *Coss v. Sullivan County Jail Adm'r*, 171 F.R.D. 68, 70 (S.D.N.Y. 1997) (internal quotation marks and citation omitted), and "courts should be especially hesitant to dismiss [a *pro se*] claim for procedural deficiencies." *Lucas*, 84 F.3d at 535. However, even *pro se* litigants must prosecute claims diligently, and dismissal with prejudice is warranted where the court gives warning. *See Gittens v. Garlocks Sealing Techs.*, 19 F. Supp. 2d 104 (W.D.N.Y. 1998) (dismissing case where *pro se* plaintiff failed to comply with two orders after over six months, court felt failure appeared wilful and in bad faith, and plaintiff had been warned twice).

Although it is within the district court's discretion to dismiss a claim for want of prosecution, the Second Circuit provides a balancing test of five factors, none of which is dispositive, for determining whether dismissal is appropriate. These factors are: (1) the duration of the plaintiff's failure to prosecute; (2) whether the plaintiff was given notice that further delay would result in dismissal; (3) whether the defendant is likely to be prejudiced by further delay; (4) the need to

5

alleviate court calendar congestion, carefully balanced against plaintiff's right to an opportunity for a day in court; and (5) the efficacy of lesser sanctions. *United States ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004); *Nita v. Conn. Dep't of Envtl. Prot.*, 16 F.3d 482, 485 (2d Cir. 1994). "However, not all of these factors need be present to warrant dismissal, and they apply regardless of whether plaintiff is represented by counsel or proceeding *pro se*." *Doe v. City of New York*, 2004 WL 2397191, at *2 (S.D.N.Y. Oct. 25, 2004). We analyze each of these factors in turn after further inquiry and consideration of facts regarding plaintiff's mental condition and prison status from the time of filing the Complaint to the time of its dismissal.

I. **Duration of Plaintiff's Failure**

The first factor involves a two part consideration: (1) whether the failures were those of the plaintiff and (2) whether they were of significant duration. *Nita*, 16 F.3d at 485. There is no doubt that it was plaintiff who failed to respond to the Court's Order or to engage in any apparent effort to prosecute the action for more than eight months. Although plaintiff sent three letters to the Court in that time period, on December 6, 11 and 16, 2000, these letters merely requested that plaintiff be brought to Court. The Court denied this request and again directed plaintiff to call the Court. Plaintiff did not comply with the Court's Order. Since his appeal was granted, it has been almost two years since plaintiff contacted the Court or defendants. Plaintiff has not communicated with Court since the status teleconference on December 7, 2005, nor did he respond to defendant's letter of August 30, 2006, nor to two Court letters directing that he reply to defendant's letter by October 15, 2006 and May 14, 2007, respectively.

There is no particular period of inactivity that constitutes a significant failure to prosecute; courts have found that delays of even a month can be inexcusable. *Copeland v. Rosen*, 194 F.R.D. 127, 131-32 (S.D.N.Y. 2000) (citing cases where Second Circuit affirmed dismissal for delays of less than two months and in one case two days); *Peters-Turnbull v. Bd. of Educ. of N.Y.*, 1999 WL 959375, at *2-3 (S.D.N.Y. Oct. 20, 1999) (five to ten month delay "falls comfortably within the time frames found sufficient in successful Rule 41(b) motions to dismiss"). Here, plaintiff's counsel withdrew and notified plaintiff that he had six months to obtain new counsel, proceed with the case or face dismissal for lack of prosecution. This Court dismissed plaintiff's case more than eight months after plaintiff received notice of his attorney's withdrawal. In that substantial length of time, plaintiff failed to obtain new counsel or proceed with his case, despite numerous letters from the Court and the Order to Show Cause. *See Antonio*, 2006 WL 2819598, at *2 (finding four months sufficient to justify dismissal for failure to prosecute where plaintiff did not comply with a court order); *Samman v. Conyers*, 231 F.R.D. 163, 165 (S.D.N.Y. 2005) (where two years passed since amended complaint was filed and it was approximately ten months since plaintiff's original attorney withdrew, court found failures were "certainly of [] significant duration"); *Feurtado v. City of New York*, 225 F.R.D. 474, 478 (S.D.N.Y. 2004) (because "[t]he duration factor is of limited significance where a party deliberately disobeys court orders," dismissal was appropriate where plaintiff failed to obey two court orders and took no other action to prosecute the case); *Wilson v. Oxford Health Plans (N.Y.), Inc.*, 2002 WL 1770813, at *2-3 (S.D.N.Y. July 31, 2002) (after court gave plaintiff more than one month to arrange for substitute counsel and warned plaintiff that failure could lead to dismissal, plaintiff's failure to respond justified dismissal for failure to prosecute).

Although during a substantial part of the pendency of this action, plaintiff was participating in the ICP, there is no indication that he did not receive correspondence or was prohibited from making telephone calls. In fact, plaintiff made several calls from the ICP to his mother and various family members and friends. Plaintiff also acknowledged receipt of the Order to Show Cause in his December 6, 2000 letter to the Court. His time in keep-lock did not coincide with any Court ordered deadlines. Plaintiff was therefore aware of the Court's order and scheduled telephone conference and was not hindered from contacting the Court.

This Court therefore concludes that if it were not for substantial questions as to plaintiff's competence and comprehension raised by his medical record, this factor would clearly weigh in favor of dismissal of the action with prejudice.

## II. Notice to Plaintiff

As to the second factor, plaintiff was given several notices that failure would result in dismissal and he was given instructions on how to avoid further failure, i.e. obtaining new counsel and participating in the teleconference. He first received such notice from his attorney in May 2000. Not hearing from the plaintiff, this Court issued an Order with notice on November 15, 2000. The Court then wrote plaintiff in December 2000 and January 2001 instructing him to call chambers on January 19 or face dismissal with prejudice. "A court's prior warning of dismissal, and subsequent inaction by a plaintiff, weighs in favor of dismissal." *Europacific Asset Mgmt. Corp. v. Tradescape, Corp.*, 233 F.R.D. 344, 353 (S.D.N.Y. 2005); *Samman*, 231 F.R.D. at 165 ("With respect to the second factor, [p]laintiff was given notice on multiple occasions that he was under an obligation to prosecute his action *pro se* if he was unable to find counsel and that his continued failure to

prosecute his case would result in its dismissal."). Except for questions as to plaintiff's competence and comprehension, this factor also weighs in favor of dismissal.

III. **Prejudice to Defendant**

"Prejudice to defendants resulting from unreasonable delay may be presumed . . . but in cases where delay is more moderate or excusable, the need to show actual prejudice is proportionally greater." *Lyell Theater Corp. v. Loews Corp.*, 682 F.2d 37, 43 (2d Cir. 1982) (citations omitted); *see Antonio*, 2006 WL 2819598, at *3. Defendants state they will suffer actual prejudice as a result of plaintiff's failures because the Complaint is ill-defined and defendants had no notice nor records of plaintiff's allegations, and it may be difficult or impossible to obtain those records and locate potential witnesses more than ten years after the alleged incidents. This factor therefore weighs heavily in favor of dismissal. *Dodson v. Runyon*, 957 F. Supp. 465, 470 (S.D.N.Y. 1997) (stating that a delay of eleven years since the events giving rise to plaintiffs cause of action occurred "makes likely the chance that memories have faded and that witnesses who might once have been available may well not be found").

IV. **Court Congestion**

"The efficient administration of justice requires that a court effectively manage its docket, guaranteeing that its cases progress with appropriate speed." *Antonio*, 2006 WL 2819598, at *4; *see Chira v. Lockheed Aircraft Corp.*, 634 F.2d 664, 668 (2d Cir. 1980) ("Burgeoning filings and crowded calendars have shorn courts of the luxury of tolerating procrastination."). Although a court

can not deny a plaintiff the right to be heard in the interest of avoiding docket congestion, where a plaintiff could have avoided dismissal "there can be no claim by plaintiff[] that [its] due process rights have been denied." *Europacific*, 233 F.R.D. at 354 (internal quotation marks and citation omitted, alterations in original). Even where plaintiff is a *pro se* litigant, his failure to take advantage of the opportunity afforded him in court will result in dismissal. *Coss*, 171 F.R.D. at 72 (although plaintiff was a *pro se* inmate, court found plaintiffs repeated failures to appear and respond was "compelling evidence of an extreme effect on court congestion") (internal quotation marks and citation omitted).

The Court has an obvious interest in expediting its docket, and plaintiff has substantially impeded it by numerous failures to respond to the Court or take any apparent action to proceed with his claims. This factor therefore also weighs in favor of dismissal.

## V. **Lesser Sanctions**

As for the fifth factor, the Court must consider lesser sanctions, but need not impose them if they would be inappropriate or ineffective. *Antonio*, 2006 WL 2819598, at *4 (where plaintiff ignored two orders and warnings of dismissal, court had no reason to believe that any lesser sanction would cause plaintiff to pursue the case); *Samman*, 231 F.R.D. at 166 (finding monetary sanctions would be ineffective given plaintiff was *pro se* litigant of apparently modest means, and numerous extensions and explicit warnings were already ineffective in motivating plaintiff to comply with court orders).

It is unlikely that monetary sanctions would be appropriate here given plaintiff's status as a

can not deny a plaintiff the right to be heard in the interest of avoiding docket congestion, where a plaintiff could have avoided dismissal "there can be no claim by plaintiff[] that [its] due process rights have been denied." *Europacific*, 233 F.R.D. at 354 (internal quotation marks and citation omitted, alterations in original). Even where plaintiff is a *pro se* litigant, his failure to take advantage of the opportunity afforded him in court will result in dismissal. *Coss*, 171 F.R.D. at 72 (although plaintiff was a *pro se* inmate, court found plaintiffs repeated failures to appear and respond was "compelling evidence of an extreme effect on court congestion") (internal quotation marks and citation omitted).

The Court has an obvious interest in expediting its docket, and plaintiff has substantially impeded it by numerous failures to respond to the Court or take any apparent action to proceed with his claims. This factor therefore also weighs in favor of dismissal.

## V. **Lesser Sanctions**

As for the fifth factor, the Court must consider lesser sanctions, but need not impose them if they would be inappropriate or ineffective. *Antonio*, 2006 WL 2819598, at *4 (where plaintiff ignored two orders and warnings of dismissal, court had no reason to believe that any lesser sanction would cause plaintiff to pursue the case); *Samman*, 231 F.R.D. at 166 (finding monetary sanctions would be ineffective given plaintiff was *pro se* litigant of apparently modest means, and numerous extensions and explicit warnings were already ineffective in motivating plaintiff to comply with court orders).

It is unlikely that monetary sanctions would be appropriate here given plaintiff's status as a

can not deny a plaintiff the right to be heard in the interest of avoiding docket congestion, where a plaintiff could have avoided dismissal "there can be no claim by plaintiff[] that [its] due process rights have been denied." *Europacific*, 233 F.R.D. at 354 (internal quotation marks and citation omitted, alterations in original). Even where plaintiff is a *pro se* litigant, his failure to take advantage of the opportunity afforded him in court will result in dismissal. *Coss*, 171 F.R.D. at 72 (although plaintiff was a *pro se* inmate, court found plaintiffs repeated failures to appear and respond was "compelling evidence of an extreme effect on court congestion") (internal quotation marks and citation omitted).

The Court has an obvious interest in expediting its docket, and plaintiff has substantially impeded it by numerous failures to respond to the Court or take any apparent action to proceed with his claims. This factor therefore also weighs in favor of dismissal.

## V. **Lesser Sanctions**

As for the fifth factor, the Court must consider lesser sanctions, but need not impose them if they would be inappropriate or ineffective. *Antonio*, 2006 WL 2819598, at *4 (where plaintiff ignored two orders and warnings of dismissal, court had no reason to believe that any lesser sanction would cause plaintiff to pursue the case); *Samman*, 231 F.R.D. at 166 (finding monetary sanctions would be ineffective given plaintiff was *pro se* litigant of apparently modest means, and numerous extensions and explicit warnings were already ineffective in motivating plaintiff to comply with court orders).

It is unlikely that monetary sanctions would be appropriate here given plaintiff's status as a

*pro se* inmate, and there is every reason to believe that further extensions and warnings would go unheeded as they have to date.

VI. **Summary**

All five of the factors prescribed by the *Drake* decision weigh, with varying force, in favor of dismissal of this action with prejudice for want of prosecution. If it were not for plaintiff's psychological problems, there would be no reason for any other result. However, the Court of Appeals remanded this action for a determination of whether plaintiff's failure to comply with this Court's orders was attributable to his incompetence and his resulting failure to comprehend the consequences of his inaction.

This Court believes that such a determination can be made on the basis of the existing record, without a further psychiatric examination of plaintiff. Plaintiff has been under almost continuous observation by psychiatrists for the past decade, and the Court has had a number of direct contacts with plaintiff by telephone and letter. His voluminous medical record and the Court's own observations establish beyond question that he suffers from serious delusions and has only a tenuous grasp of reality. This Court's express written warning to plaintiff that the action would be dismissed with prejudice if plaintiff did not make a telephone call to the Court on a specified date could scarcely have been clearer. If plaintiff did not understand that warning or appreciate the consequences of disregarding it, he surely is not competent to try the action himself. And, even after more than seven years of effort, he has been unable to find counsel willing to represent him. His last counsel resigned because he concluded that plaintiff was "totally incoherent" and "mentally

incapable of pursuing his claim." (*Jacobs*, 2005 U.S. App. LEXIS 19523, at *3.) Considering that, even if the Court were to appoint non-volunteer trial counsel for plaintiff, there is no reason to expect that this would result in the effective presentation of his claims. Because there is no written record of his alleged mistreatment by correctional officers, because any fellow inmates who witnessed the events, even if he could identify them, are by this time probably widely scattered and difficult to track down, and because no correctional officers who participated in or observed his abuse could be expected to admit their culpability, successful prosecution of this action depends almost entirely on plaintiff's ability to tell a credible story about incidents that happened more than ten years ago. The credibility of a witness who is unshakably convinced that he is the millionaire son of Governor Pataki and that CIA agents are assisting his preparation of the case for trial is obviously subject to serious challenge.

Prisoners who are abused by correctional officers are undeniably entitled to their day in a court sympathetic to their suffering and their need for justice. But plaintiffs who are mentally incompetent and seriously delusional obviously cannot effectively try the case themselves. And if they are unable even to give their trial counsel a credible account of their mistreatment or identify any other persons who witnessed it, no counsel can effectively try the case on their behalf. However, so that abusive correctional officers do not get a free pass when their inmate victims are incompetent, a lawsuit brought by such an inmate should not be dismissed with prejudice for want of prosecution but placed on the court's suspense docket, subject to reinstatement to active status if the plaintiff's psychiatric condition improves to the point where he can at least give trial counsel the necessary factual support.

## CONCLUSION

This Court's Order entered on January 24, 2001 is withdrawn. This action is placed on the Court's Suspense Docket, subject to reinstatement to active status at any time hereafter upon a showing either that plaintiff is mentally competent to litigate the action *pro se* or that he is represented by qualified counsel willing to litigate it on his behalf.

SO ORDERED.

Dated: White Plains, New York
      January 22, 2007

*William C. Conner*
Sr. United States District Judge

13